UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
TARA MAHONEY

                                    Plaintiff,

        -against-

JEREMIAH D'ANNA, DDS, PLLC

                                Defendant.
-----------------------------------------------------------------x

**CV**

**COMPLAINT**

**JURY TRIAL REQUESTED**

## COMPLAINT

Plaintiff Tara Mahoney (hereafter also referred to as "Plaintiff"), by counsel, Parker Hanski LLC, as and for the Complaint in this action against Defendant Jeremiah D'Anna, DDS, PLLC (also referred to as "Defendant"), hereby alleges as follows:

## NATURE OF THE CLAIMS

1. This lawsuit opposes ongoing and inexcusable disability discrimination by the Defendant. As explained below, plaintiff required emergency dental treatment and Defendant denied such treatment by unreasonably refusing to accommodate Plaintiff's request for the procedure to occur while in her wheelchair because she is physically unable to transfer from her wheelchair onto a dental chair. By so doing, Defendant needlessly prolonged Plaintiff's excruciating tooth pain and suffering.

2. In this action, Plaintiff seeks declaratory, injunctive and equitable relief, as well as monetary damages and attorney's fees, costs and expenses to redress Defendant's unlawful disability discrimination against Plaintiff, in violation of Title III of the Americans with Disabilities Act ("ADA") 42 U.S.C. §§ 12181 *et seq.* and its implementing regulations; Section 504 of the Rehabilitation Act ("Section 504") 29

U.S.C. § 794, *et seq;* the New York State Executive Law (the "Executive Law"), § 296; New York State Civil Rights Law, § 40; the non-discrimination provisions of the Patient and Protection Affordable Care Act ("ACA"), 42 U.S.C. § 18116; and the Administrative Code of the City New York (the "Administrative Code"), § 8-107. Plaintiff also asserts claims for Negligence. Defendant is vicariously liable for the acts and omissions of its employees and agents for the conduct alleged herein.

3. Full and equal access to dental care and treatment is critical for persons with disabilities such as Plaintiff. Defendant has and continues to fail to provide persons with disabilities, including Plaintiff, the same quality of care as provided to non-disabled patients, all because of Plaintiff's disabilities.

4. Defendant has failed to implement comprehensive policies, practices and procedures to make its facilities and services available to Plaintiff.

5. Defendant's failure to meet it legal obligations has resulted in a two-tiered system of health care that relegates people with disabilities to substandard or, as happened here, no treatment.

6. This ongoing pattern of systemic discrimination denies Plaintiff and other similarly disabled persons of their rights under federal and state statutes, including the "full and equal enjoyment" guarantee of Title III of the Americans with Disabilities Act; and the "program access" requirement under Section 504 of the Rehabilitation Act.

7. The day has come for Defendant to accept responsibility. This action seeks to right that wrong via recompensing Plaintiff and making Defendant's place of public accommodation compliant with the law so that Plaintiff can finally enjoy the full and equal opportunity that Defendant provides to non-disabled patients.

**JURISDICTION AND VENUE**

8. This Court has jurisdiction over this matter pursuant to 42 U.S.C. § 12188 and 28 U.S.C. §§ 1331 and 1343 as this action involves federal questions regarding the deprivation of Plaintiff's rights under the ADA, ACA and Section 504 of the Rehabilitation Act.

9. The Court has supplemental jurisdiction over Plaintiff's related claims arising under the New York State and City laws pursuant to 28 U.S.C. § 1367(a).

10. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because Defendant's acts of discrimination alleged herein occurred in this district and Defendant's place of public accommodation and facility that is the subject of this action is in this district.

**PARTIES**

11. At all times relevant to this action, Plaintiff Tara Mahoney (hereinafter also referred to as "Tara") has been a resident of Staten Island, New York.

12. Tara suffers from Spinal Muscular Atrophy, which requires her to use a motorized wheelchair for mobility.

13. At all times relevant to this action, Plaintiff has been and remains a person with a disability who is substantial limited in her life activities because she is unable to walk or stand.

14. Defendant Jeremiah D'anna, DDS, PLLC is a New York State Domestic Professional Service Limited Liability Company authorized by the Secretary of the State of New York to do business in New York State.

3

15. Defendant Jeremiah D'Anna, DDS, PLLC owns and operates an oral & maxillofacial surgical practice located at 4571 Hylan Boulevard in Staten Island, New York.

16. Defendant Jeremiah D'Anna, DDS, PLLC provides oral & maxillofacial surgical services to the public by appointment.

17. Dr. Jeremiah D'Anna, DDS owns and operates Jeremiah D'anna, DDS, PLLC.

18. Dr. Jeremiah D'Anna, DDS is an oral & maxillofacial surgery specialist.

19. Defendant is a public accommodation as it owns, leases, controls or operates a professional office of a health care provider within the meaning of the ADA (42 U.S.C. § 12181 and 28 C.F.R. § 36.104), the Executive Law (§ 292(9)), and the Administrative Code as it is operated by a private entity as a dental practice, and its operations affect commerce.

20. Tara has been a patient of Defendant since August of 2018.

21. Dr. Jeremiah D'Anna, DDS treated Tara in August of 2018 by performing a wisdom tooth extraction.

22. Dr. Jeremiah D'Anna, DDS performed the August 2018 wisdom tooth removal while Plaintiff was in her wheelchair.

23. Because of her disability, Tara cannot physically transfer by herself from her wheelchair onto a dental chair.

24. Tara consequently needs to have her dental treatment performed while she is in her wheelchair.

25. Tara's wheelchair is motorized and is fully adjustable in the same way that a dental examination chair (e.g. it can mechanically recline up and down).

26. Before extracting Tara's wisdom tooth in August of 2018, Dr. Jeremiah D'Anna, DDS moved the dental chair and positioned Tara's wheelchair in the location where the dental chair had been.

27. Dr. Jeremiah D'Anna, DDS then successfully performed the wisdom tooth extraction while Tara was in her wheelchair without incident or difficulty.

28. In or around early April 2020, Tara began experiencing excruciating tooth pain and required immediate dental treatment to pull her tooth.

29. At around 11:15 am on April 7, 2020, Tara called Defendant Jeremiah D'Anna, DDS, PLLC to schedule an immediate appointment to have her tooth pulled.

30. Tara described her symptoms to an employee of Defendant (this employee of Defendant is hereinafter referred to as "Employee"). In response, the Employee offered Tara an appointment for that afternoon.

31. Tara accepted the appointment and reminded the Employee that she uses a wheelchair and would require that the procedure be performed while she is in her wheelchair.

32. The Employee told Tara to hold on in order for her to communicate with Dr. Jeremiah D'Anna, DDS concerning Tara's requested disability related accommodation.

33. The Employee returned to the telephone and informed Tara that Dr. Jeremiah D'Anna, DDS would not perform the procedure while she is in her wheelchair.

34. The Employee informed Tara instead that Dr. Jeremiah D'Anna, DDS would only perform the procedure in his dental examination chair and that Tara would have to transfer from her wheelchair onto the dental examination chair.

35. Tara responded that she did not understand why the doctor was requesting this because he had previously treated her while she was in her wheelchair. Tara also explained that her wheelchair is motorized and fully adjustable in the same way that a dental examination chair. The Employee, however, responded that this is what the doctor told her.

36. Shocked and desperate to end the pain, Tara begged the employee to let her speak directly to Dr. Jeremiah D'Anna, DDS. But the Employee said "No."

37. Tara pleaded and told the Employee that she was in so much pain and needed help.

38. The Employee asked Tara if she could transfer from her wheelchair to the dental chair. Tara replied that she could not. The Employee then callously asked her "Are your arms paralyzed as well?"

39. Tara explained that while her arms are not paralyzed, she does not have the strength or ability to physically transfer herself safely from her wheelchair to the dental chair.

40. Though not her preference, Tara told the Employee that she has a portable Hoya lift that, with her husband's assistance, could transfer her from her wheelchair onto the dental chair. Tara stated that she would be willing to bring the portable Hoya lift into the office to effectuate the transfer. Again, the Employee said "No."

41. Finally, Tara asked if she could just come in to the office because she was so desperate to stop the excruciating pain – to which the Employee replied "sorry we can't help you" and ended the conversation.

42. Crying and still in pain, Tara struggled and ultimately found another Oral surgeon, but that doctor could only see her the following day. Tara accepted the appointment.

43. Still desperate for immediate help, Tara called back the Employee and informed that she was able to get an appointment for the following day but that she really needed relief that day. The Employee refused.

44. Throughout that day and the night, Tara suffered from pain shooting from her jaw to her ear. She could not eat and when she tried to eat it felt like an electric shock every time there was pressure on the tooth. Nor could she sleep and stayed up all night with an ice pack crying from the pain.

45. The following day, April 8, 2020, Tara finally received the dental treatment she desperately needed, and she was treated in her wheelchair without incident.

46. By refusing to make reasonable accommodations or modifications relating to Plaintiff's disability, Defendant needlessly prolonged Tara's pain and suffering.

47. Defendant's refusal to permit the accommodations requested was unreasonable and could have been provided without undue hardship to Defendant and/or could have been provided without a fundamental alteration to Defendant.

48. Defendant violated their obligations to provide Plaintiff with reasonable accommodations and modifications for Plaintiff's disability.

49. Defendant violated their obligations to engage in a good faith interactive dialogue with Plaintiff Tara Mahoney to provide reasonable accommodations and modifications for her disability.

50. Defendant's failure to accommodate prevented and deterred Plaintiff from utilizing the Defendant.

51. Defendant's policies, practices, procedures for persons with disabilities denies and continues to deny Plaintiff the opportunity to participate in or benefit from the Defendant's services because of disability.

52. Defendant's discriminatory policies, practices, procedures for persons with disabilities continue to exist.

53. Plaintiff would continue utilize the Defendant's services but for the discriminatory policies, practices, procedures for persons with disabilities identified herein.

## FIRST CAUSE OF ACTION

## (VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT)

54. Plaintiff realleges and incorporates by reference all allegations set in this Complaint as if fully set forth herein.

55. Plaintiff is substantially limited in her life activities because she is unable to walk or stand and thus has a disability within the meaning of the ADA. As a direct and proximate result of Plaintiff's disability, she uses a wheelchair for mobility.

56. Defendant has and continues to subject Plaintiff to disparate treatment by denying Plaintiff full and equal opportunity to use its place of public accommodation all

because Plaintiff is disabled. Defendant's policies and practices have disparately impacted Plaintiff as well.

60. Defendant discriminated and continues to discriminate on the basis of disability in the full and equal enjoyment of its goods, services, facilities, privileges, advantages, or accommodations in violation of Title III of the ADA, 42 U.S.C. § 12182(a), and the Title III implementing regulation at 28 C.F.R. Part 36, by:

   a. denying an individual or class of individuals, on the basis of disability, the ability to participate in or benefit from its goods, services, facilities, privileges, advantages, or accommodations by refusing to provide pain management treatment, in violation of 42 U.S.C. § 12182(b)(1)(A)(i) and 28 C.F.R. § 36.202;

   b. using standards or criteria or methods of administration that have the effect of discriminating on the basis of disability, in violation of 42 U.S.C. § 12182(b)(1)(D) and 28 C.F.R. § 36.204; and

   c. imposing or applying eligibility criteria that screen out, or tend to screen out, an individual with a disability or class of individuals with disabilities from fully and equally enjoying Defendant's goods, services, facilities, privileges, advantages, or accommodations, in violation of 42 U.S.C. § 12182(b)(2)(A)(i) and 28 C.F.R. § 36.301(a).

61. By failing to comply with the law in effect for decades, Defendant has articulated to disabled persons such as the Plaintiff that they are not welcome, objectionable and not desired as patrons of its public accommodation.

62. Defendant has discriminated against Plaintiff by failing to modify its policies, procedures, and practices in a reasonable manner, when such modifications are necessary to ensure equal access for individuals with physical disabilities. 42 U.S.C. § 12182 (b)(2)(A)(ii).

62. Defendant has discriminated against Plaintiff by providing goods, services, facilities, privileges, advantages, or accommodations that are different or separate from that provided to other individuals. 42 U.S.C. § 12182(b)(l)(A)(iii).

63. Defendant's place of public accommodation fails to provide an integrated and equal setting for the disabled, all in violation of 42 U.S.C. §12182(b)(1)(A) and 28 C.F.R. § 36.203.

64. Defendant has and continues to discriminate against Plaintiff in violation of the ADA. Unless restrained from doing do so, Defendant will continue to violate the law. And through their conduct, Defendant has caused and will continue to cause Plaintiff immediate and irreparable injury.

## SECOND CAUSE OF ACTION

## (VIOLATIONS OF THE SECTION 504 OF THE REHABILITATION ACT)

65. Plaintiff realleges and incorporates by reference all allegations set in this Complaint as if fully set forth herein.

66. Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, and the regulations promulgated thereunder, prohibit discrimination against people with disabilities by recipients of federal funding. Section 504 provides, in pertinent part, that:

> No otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . .

67. Section 504 defines "[p]rogram or activity" in part as "an entire corporation, partnership, or other private organization, or an entire sole proprietorship . . .

which is principally engaged in the business of providing . . . health care." 29 U.S.C. § 794(b)(3)(A)(ii).

68. Defendant has received federal financial assistance at all relevant times.

69. Through the acts and omissions alleged herein, Defendant has, solely because of Plaintiff's disabilities, excluded Plaintiff from participation in Defendant's programs and activities and denied Plaintiff the benefits of Defendant's programs and activities, and subjected Plaintiff to discrimination in violation of 29 U.S.C. § 794, et. seq. and the regulations promulgated thereunder.

70. Defendant's acts and omissions described herein violate the equal access and nondiscrimination provisions of Section 504 and the regulations promulgated thereunder and have resulted in injury to Plaintiff.

71. Defendant acted with deliberate indifference to Plaintiff's rights guaranteed under Section 504.

72. Defendant has had actual knowledge of the discrimination due to, among other things, the open and obvious nature of the discriminatory condition and deliberately decided not to address the discrimination and institute corrective measures.

73. As a proximate result of Defendant's violations of Section 504, Plaintiff has been injured and continues to be injured, as set forth herein in an amount to be determined at trial.

## THIRD CAUSE OF ACTION

### (VIOLATION OF THE PATIENT PROTECTION & AFFORDABLE CARE ACT, SECTION 1557, 42 U.S.C. § 18116)

74. The regulations implementing Section 1557, the non-discrimination provision of the Patient Protection and Affordable Care Act ("ACA"), went into effect on July 18, 2016.

75. Section 1557 prohibits discrimination because of race, color, national origin, sex, age or disability in certain health programs and activities.

76. Section 1557's definition of prohibited discrimination relies in part on Section 504 of the Rehabilitation Act. An individual shall not, on the ground prohibited under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. 794, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance, including credits, subsidies, or contracts of insurance. Section 1557 of the Patient Protection and Affordable Care Act, 42 U.S.C.A. § 18116(a). The rule itself states that "[t]he enforcement mechanisms available for and provided under Title VI of the Civil Rights Act of 1964, Title IX of the Education Amendments of 1972, Section 504 of the Rehabilitation Act of 1973, or the Age Discrimination Act of 1975 shall apply for purposes of Section 1557 as implemented by this part." 45 C.F.R. § 92.301.

77. The implementing regulations broadly define Federal financial assistance as "any grant, loan, credit, subsidy . . . or any other arrangement by which the Federal government provides or otherwise makes available assistance," including assistance provided by means of tax credits, subsidies, or payments given to individuals to purchase

12

insurance from "any entity providing health-related insurance coverage." See 45 C.F.R. § 92.4

78. The implementing regulations state the following: "For an entity principally engaged in providing or administering health services or health insurance coverage or other health coverage, all of its operations are considered part of the health program or activity." 45 C.F.R. § 92.4.

79. Upon information and belief, Defendant receives Federal financial assistance through its participation in the Medicare Part D prescription insurance program, and other Medicare insurance programs.

80. The nondiscrimination provision of Section 1557 applies to Defendant because it qualifies as "any health program or activity, any part of which is receiving Federal financial assistance, including credits, subsidies, or contracts of insurance." 42 U.S.C.A. § 18116(a).

81. Section 1557 provides a private right of action to individuals for violations of Section 1557. See 45 C.F.R. § 92.302(d); see also Nondiscrimination in Health Programs and Activities, 81 Fed. Reg. 31,376, 31,439 (May 18, 2016) (clarifies that "a private right of action and damages for violations of Section 1557 are available to the same extent that such enforcement mechanisms are provided for and available under Title VI, Title IX, Section 504, or the Age Act with respect to recipients of Federal financial assistance").

82. Defendant qualifies as a health program or activity pursuant to Section 1557 of the Patient Protection and Affordable Care Act, 42 U.S.C.A. § 18116(a).

83. Defendant receives Federal financial assistance through its participation in the Medicare insurance programs.

84. Defendant violates Section 1557's prohibition against discrimination by subjecting the disabled to inferior treatment than what it provides to the non-disabled.

85. Plaintiff has suffered damages in an amount to be determined at trial.

## FORTH CAUSE OF ACTION

## (VIOLATION OF NEW YORK STATE EXECUTIVE LAW)

86. Plaintiff realleges and incorporates by this reference all allegations set forth in this Complaint as if fully set forth herein.

87. Plaintiff Tara Mahoney is a person with a disability who is substantially limited in her life activities because she is unable to walk or stand. As a direct and proximate result of Plaintiff's disability, she uses a wheelchair for mobility. Plaintiff suffers from a disability within the meaning of the Executive Law § 296(21).

88. By refusing to permit and/or make reasonable accommodations and modifications for the Plaintiff's disability, Defendant has committed a discriminatory practice in violation of the Executive Law §296(2).

89. Defendant has discriminated against the Plaintiff by refusing to make reasonable accommodations and modifications in its rules, policies, practices, or services that are necessary to afford Plaintiff equal opportunity to use and enjoy Defendant's public accommodation.

90. It will not and would not impose an undue hardship or undue burden on Defendant to make the reasonable accommodations and modifications requested.

91. As a direct and proximate result of Defendant's unlawful discrimination in violation of New York State Executive Law, Plaintiff has endured severe pain and suffering and continues to suffer emotional distress.

92. Plaintiff has suffered damages in an amount to be determined at trial before a jury.

## FIFTH CAUSE OF ACTION

### (VIOLATION OF THE ADMINISTRATIVE CODE OF THE CITY OF NEW YORK)

93. Plaintiff realleges and incorporates by this reference all allegations set forth in this Complaint as if fully set forth herein.

94. Plaintiff Tara Mahoney is a person with a disability who is substantially limited in her life activities because she is unable to walk or stand. As a result, Plaintiff suffers from a disability within the meaning of the Administrative Code § 8-102(16).

95. The Local Civil Rights Restoration Act of 2005 (the "Restoration Act"), also known as Local Law 85, clarified the scope of the Administrative Code in relation to the New York City's Human Rights Law. The Restoration Act confirmed the legislative intent to abolish "parallelism" between the Administrative Code and the Federal and New York State anti-discrimination laws by stating as follows:

> The provisions of this title shall be *construed liberally* for the accomplishment of the *uniquely broad and remedial* purposes thereof, regardless of whether federal or New York State civil and human rights laws, including those laws with provisions comparably-worded to provisions of this title, have been so construed.

Restoration Act § 7 amending Administrative Code §8-130 (emphasis added).

96. The Administrative Code requires public accommodations to make reasonable modifications and accommodations for people with disabilities. Administrative Code § 8-102(8) and (15).

97. Refusing to make reasonable modifications and accommodations for persons with disabilities constitutes discrimination in violation of Administrative Code §§ 8-107(4) and 8-107(15)

98. By refusing to make reasonable accommodations and modifications for the Plaintiff's disability, Defendant has committed a discriminatory practice in violation of the Administrative Code §§ 8-107(4) and 8-107(15).

99. Defendant has and continues to subject Plaintiff to disparate treatment by directly and indirectly refusing, withholding, and denying reasonable accommodations, advantages, services, facilities, and privileges of their housing accommodation all because of disability in violation of Administrative Code § 8-107(5)(a)(1).

100. The Administrative Code requires public accommodations to engage in a cooperative dialogue within a reasonable time with a person who has requested an accommodation and to also provide the person requesting an accommodation a written final determination identifying any accommodation granted or denied. Administrative Code § 8-107(28).

101. Refusing or otherwise failing to engage in a cooperative dialogue within a reasonable time with a person who has requested an accommodation constitutes discrimination in violation of Administrative Code § 8-107(28).

102. By refusing or otherwise failing to engage in a cooperative dialogue within a reasonable time with a person who has requested an accommodation, Defendant

has committed a discriminatory practice in violation of the Administrative Code § 8-107(28).

103. As a direct and proximate result of Defendant's unlawful discrimination in violation of Administrative Code of the City of New York, Plaintiff has endured severe pain and suffering and continues to suffer emotional distress.

104. It would not have and still would not impose an undue hardship on Defendant to make the reasonable accommodations requested for Plaintiff. Administrative Code §8-102(18)

105. By failing to comply with the law, Defendant has articulated to disabled persons such as the Plaintiff that they are not welcomed, objectionable and not desired.

106. Defendant engaged in discrimination with willful or wanton negligence, and/or recklessness, and/or a conscious disregard of the rights of others and/or conduct so reckless as to amount to such disregard for which Plaintiff is entitled to an award of punitive damages pursuant to Administrative Code § 8-502.

107. Plaintiff has suffered damages in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION

### (VIOLATIONS OF NEW YORK STATE CIVIL RIGHTS LAWS)

108. Plaintiff realleges and incorporates by this reference all allegations set in this Complaint as if fully set forth herein.

109. Defendant discriminated against Plaintiff pursuant to New York State Executive Law.

110. Consequently, Plaintiff is entitled to recover the penalty prescribed by Civil Rights Law §§ 40-c and 40-d, in the amount of $500 for each violation.

111. Notice of this action has been served upon the Attorney General as required by Civil Rights Law § 40-d.

## SEVENTH CAUSE OF ACTION

## (NEGLIGENCE AND NEGLIGENT HIRING/SUPERVISION/RETENTION)

112. Plaintiff realleges and incorporates by this reference all allegations set in this Complaint as if fully set forth herein.

113. Defendant is vicariously liable for the Employee and its employees' negligent acts described herein as those acts were committed within the scope of the employee's employment.

114. Defendant negligently hired, supervised and/or retained the Employee and its employee(s) for the type of behavior which resulted in Plaintiff's injuries in this action.

115. Defendant negligently placed the Employee and its employees in a position to cause foreseeable harm, which most probably would not have occurred had Defendant taken reasonable care in the hiring and supervision of employees.

116. Defendant failed to take reasonable care in the hiring, supervising and/or retaining of its employees.

117. As a result of the foregoing Plaintiff suffered injuries, in an amount to be determined at trial, which were caused by reason of the negligence and carelessness of Defendant in its ownership, operation, management, maintenance, control, security and supervision of employees.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court enter a judgment against the Defendant in favor of Plaintiff that contains the following relief:

**A.** Enter declaratory judgment declaring that Defendant has violated the ADA and its implementing regulations, Section 504 of the Rehabilitation Act, Section 1557 of the Affordable Care Act, Administrative Code of the City of New York, and the Executive Law and declaring the rights of Plaintiff as to Defendant's place of public accommodation, and Defendant's policies, practices and procedures;

**B.** Award to Plaintiff Compensatory damages, plus pre-judgment interest, because of Defendant's violations of Section 504 of the Rehabilitation Act, New York State Executive Law, and the Administrative Code of the City of New York;

**C.** Award Plaintiff monetary damages for each violation of the law pursuant to New York State Civil Rights Law §§ 40-c and 40-d;

**D.** Award to Plaintiff Punitive damages in order to punish and deter the Defendant for their violations of the Administrative Code of the City of New York;

**E.** Find that Plaintiff is a prevailing party in this litigation and award reasonable attorney's fees, costs and expenses pursuant to ADA, Section 1557 of the Affordable Care Act, Section 504 of the Rehabilitation Act and the Administrative Code of the City of New York;

**F.** Retain jurisdiction over the Defendant until the Court is satisfied that the Defendant's unlawful practices, acts and omissions no longer exist and will not reoccur; and

  **G.**  For such other and further relief, at law or in equity, to which Plaintiff may be justly entitled.

## **JURY DEMAND**

Plaintiff demands a trial by jury on all claims so triable.

Dated: May 5, 2020
   New York, New York

               Respectfully submitted,

               **PARKER HANSKI LLC**


               By: /s     
                 Glen H. Parker, Esq.
                 Adam S. Hanski, Esq.
                 Robert G. Hanski, Esq.
                 Attorneys for Plaintiff
                 40 Worth Street, 10th Floor
                 New York, New York 10013
                 Telephone: (212) 248-7400
                 Facsimile: (212) 248-5600
                 Email:ash@parkerhanski.com
                 Email: ghp@parkerhanski.com
                 Email: rgh@parkerhanski.com